# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Alveto Rivera,

Case No. 26-cv-2133 (PJS/DJF)

Plaintiff,

v.

**ORDER AND
REPORT AND RECOMMENDATION**

Jonathan Stewart, Christopher Eckart, Anthony M. Herring, Phil Olson, Blake Carey, Charles S. Fri, Evelyn Flesvig, Georgia Gates, and Nick Budnick, *in their individual and official capacities*,

Defendants.

---

This matter is before the Court on *pro se* Plaintiff Alveto Rivera's *Complaint for Violation of Civil Right Under 42 U.S.C. § 1983* (ECF No. 1) ("Complaint") and *Declaration in Support of Request for Leave to Proceed In Forma Pauperis* (ECF No. 2) ("IFP Application"), which the Court construes as a request to proceed *in forma pauperis* ("IFP") in this action. Because Mr. Rivera has filed an IFP Application, the Court reviews the Complaint pursuant to 28 U.S.C. § 1915(e)(2). Mr. Rivera is a detainee in the Minnesota Sex Offender Program ("MSOP") who alleges he was sexually assaulted by two MSOP staff members. For the reasons given below, the Court recommends dismissing some of the asserted claims and allowing others to proceed, and orders initiation of the service process for the remaining Defendants.

## BACKGROUND

### I.     The Parties

MSOP is a Minnesota-run program designed to provide sex offender treatment to people who are civilly committed in Minnesota as sexually dangerous persons or persons with sexual psychopathic personalities. Minn. Stat. § 246C.13; 253D.02, subd. 4; § 246B.01, subds. 3-4. The

Complaint names eight alleged MSOP employees as Defendants: Jonathan Stewart and Christopher Eckart (identified as security counselors at MSOP's Moose Lake facility ("MSOP Moose Lake")), Anthony M. Herring (MSOP Moose Lake's security program manager), Phil Olson (a unit director at MSOP Moose Lake), Blake Carey (a security counselor supervisor at MSOP Moose Lake and Mr. Stewart's direct supervisor), Charles S. Fri (a unit supervisor at MSOP Moose Lake), Evelyn Flesvig (Mr. Rivera's "primary therapist" at MSOP Moose Lake), and Nick Budnick (an employee with MSOP Vocational Services). (ECF No. 1 at 1-3.) The Complaint also names Georgia Gates, an investigator with the Carlton County Sheriff's Office, as a defendant.[1] Mr. Rivera sues all Defendants in their individual and official capacities.

Finally, the Complaint devotes significant space to Trisha Johnson and describes her as a "defendant", though it does not name her in the caption or list her among the "Parties". (*Id.* at 1-2; 82-89.) According to the Complaint, Ms. Johnson is an MSOP vocational-rehabilitation counselor who ignored Mr. Rivera's sexual assault report and directly caused a retaliatory employment action against him. (*See id.* at 82-89.) Liberally construing the *pro se* pleading, the Court treats Ms. Johnson as a Defendant.

## II.    The Allegations[2]

### A.    Pat Search Allegations

For purposes of Section 1915 review, the Court accepts the factual allegations in Mr. Rivera's Complaint as true. *See Jackson v. Nixon*, 747 F.3d 537, 540-41 (8th Cir. 2014). The

---

[1] The Complaint is internally inconsistent about Ms. Gates's affiliation. The "Parties" section states that she is employed by the "Moose Lake Police Department." (*See* ECF No. 1 at 3.) But the sections containing specific facts regarding Ms. Gates allege she is an investigator with the "Carlton County Police Department." (*See id.* at 76.) Given the specificity of the allegations concerning Ms. Gates's affiliation with Carlton County (*see id.* at 73-77), the Court construes the Complaint as alleging she is a Carlton County employee.

[2] The Complaint is idiosyncratic: Mr. Rivera structures it Defendant-by-Defendant, rather than as a unified factual narrative. The pleading thus has nine sequential sections (one per

2

Complaint alleges that on March 25, 2025, while Mr. Rivera was working in the MSOP Moose Lake kitchen, Mr. Stewart performed a "pat search" on him. (*Id.* at 4.) Mr. Stewart put two fingers down the front of Mr. Rivera's pants, touched his pubic area, and began moving his hand toward Mr. Rivera's buttocks. (*Id.*) Mr. Rivera pushed Mr. Stewart's hand away and confronted him. (*Id.* at 4–5.) Mr. Stewart apologized and said he knew what he had done was wrong and that it would not happen again. (*Id.* at 5.) About fifteen other kitchen workers witnessed the incident. (*Id.*)

The Complaint alleges Mr. Eckart also did an inappropriate pat search in the kitchen in March 2025. Mr. Eckart moved his hands down to the zipper area of Mr. Rivera's pants and wrapped his hand around Mr. Rivera's penis through the clothing. (*Id.* at 17.) Mr. Eckart apologized after Mr. Rivera pushed his hand away, but Mr. Eckart later threatened to continue pat-searching Mr. Rivera regardless of his wishes. (*Id.* at 17, 19.) Another MSOP employee, not named as a Defendant here, saw Mr. Eckart attempting similar conduct on a later occasion and intervened, and a "kitchen supervisor" observed and confronted Mr. Eckart about conducting inappropriate searches. (*Id.* at 18.)

### B.    Allegations Regarding Incident Reports

Mr. Rivera alleges he immediately reported the incidents to MSOP officials through written client request submissions, but his reports were met with a systemic refusal to investigate or protect him from further contact with the accused staff. (*See, e.g.*, *id.* at 6, 40.) Mr. Olson, the relevant unit director, declined to take Mr. Rivera's initial report on March 25, 2025 because he needed to

---

Defendant), each captioned "Statement of Claim" and devoted exclusively to that Defendant's alleged conduct. Within each section, Mr. Rivera reintroduces the underlying March 2025 incident, recites numbered allegations about the single Defendant at issue, and includes a standalone prayer for relief directed at that Defendant individually. (*See, e.g.*, ECF No. 1 at 3-17, section on Stewart; *id.* at 17-31, section on Eckart.) The pleading sets forth no unified counts or causes of action, and Mr. Rivera retells certain core events across multiple sections.

3

leave for the day, and Mr. Olson did not respond to subsequent reports from Mr. Rivera. (*Id.* at 6, 39-40.) Mr. Carey, Mr. Stewart's direct supervisor, reviewed kitchen camera footage and stated in writing that he had observed a routine pat search without sexual contact, but Mr. Carey refused to let Mr. Rivera see the footage. (*Id.* at 47-48.) Ms. Flesvig, Mr. Rivera's therapist, learned of the pat downs during group therapy sessions but took no protective or reporting action. Instead, she told Mr. Rivera he should look for another job. (*Id.* at 62-64.) Mr. Herring, the security program manager at MSOP Moose Lake, conducted a "video review" on May 30, 2025, but he reviewed footage from March 15, 2025—a date when neither Mr. Stewart nor Mr. Eckart was working in the kitchen—and would not review footage from other dates. (*Id.* at 32-33.) Mr. Fri, the unit supervisor, met with Mr. Rivera about the allegations and promised to arrange an administrative meeting with the accused staff, but he never did so. Ultimately, Mr. Fri signed paperwork transferring Mr. Rivera in October 2025 from MSOP Moose Lake to MSOP's St. Peter facility, where Mr. Rivera is currently housed. (*Id.* at 54-56, 59-60, 92.)

Mr. Rivera reported the assaults to the Carlton County Police Department. (*Id.* at 73-74.) The police assigned Ms. Gates, an investigator, to the matter. (*Id.* at 74.) Ms. Gates conducted her entire investigation by phone; reviewed only the March 15, 2025 footage that MSOP provided; did not review footage from any other dates; did not visit the facility; and did not interview the kitchen workers whom Mr. Rivera identified as witnesses. (*Id.* at 74-76.)

### C.     Retaliation Allegations

On June 17, 2025, MSOP staff filed an incident report against Mr. Rivera for "Lying or Misrepresentation" and "Abuse/Harassment," which characterized his sexual assault complaints as harassment of kitchen staff. (*Id.* at 84.) The incident report was dismissed on June 18, 2025, but on June 26, 2025, Ms. Johnson, a vocational rehabilitation counselor, served Mr. Rivera with

a "Vocational Treatment Notice" immediately withdrawing his job placement in the MSOP

kitchen.  (*Id.* at 83.)  Mr. Rivera claims the notice's stated policy ground was pretextual and that

he was actually terminated in retaliation for reports against Mr. Stewart and Mr. Eckart.  (*Id.* at 13,

83-84.)

### III.    Claims and Relief Sought

Construing the Complaint liberally, the Court reads it as bringing the following claims

under 42 U.S.C. § 1983:

1.    claims alleging violations of the Fourteenth Amendment right to bodily integrity against Mr. Stewart and Mr. Eckart based on the pat searches;[3]
2.    claims alleging Fourteenth Amendment failure-to-protect violations against Mr. Herring, Mr. Olson, Mr. Carey, Mr. Fri, and Ms. Flesvig;
3.    claims alleging that Mr. Herring, Mr. Olson, Mr. Carey, Mr. Fri, and Ms. Gates failed to conduct adequate investigations into Mr. Rivera's reports of sexual assault;
4.    claims asserting that Ms. Flesvig, Ms. Johnson and other MSOP staff violated Mr. Rivera's constitutional rights by failing to discharge their obligations as mandated reporters under Minnesota[4] and federal[5] law;
5.    a First Amendment retaliation claim against Ms. Johnson based on the withdrawal of Mr. Rivera's kitchen-based vocational placement and related disciplinary action documented in a June 17, 2025, incident report; and
6.    a Fourteenth Amendment procedural due process claim against Ms. Johnson, on the ground that Mr. Rivera's removal from the kitchen position without any advance hearing deprived him of a constitutionally protected property or liberty interest.

---

[3] Because Mr. Rivera is civilly committed, his federal constitutional claims arise under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment.  *See, e.g.*, *Youngberg v. Romeo*, 457 U.S. 307, 314 (1982); *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021) (citing cases, including *Youngberg*).

[4] The Court is aware of only one Minnesota statute that plausibly bears on Mr. Rivera's allegations here: the state's Vulnerable Adults Act, ch. 542, § 1, 1980 Minn. Laws 1391 (codified as amended at Minn. Stat. §§ 626.557–.5573).

[5] The Court liberally construes the Complaint as referencing the Prison Rape Elimination Act of 2003 ("PREA"), Pub. L. No. 108-79, 117 Stat. 972 (codified as amended at 34 U.S.C. §§ 30301–30309 (formerly 42 U.S.C. §§ 15601–15609)).  (*See* ECF No. 1 at 26, referencing PREA.)

(*See generally,* ECF No. 1.)  Finally, Mr. Rivera invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) for state law tort claims of assault, battery, negligence, and intentional infliction of emotional distress against certain Defendants.[6]

Mr. Rivera seeks declaratory and injunctive relief, including orders: restoring his vocational placement; referring the underlying incidents to outside law enforcement; requiring certain Defendants to attend sex offender treatment; directing Mr. Herring to fire Mr. Eckart; and ordering his release from MSOP custody.  (*See, e.g.*, *id.* at 15-17, 27-31, 53, 61, 90.)  He also seeks compensatory and punitive damages against the named Defendants, jointly and severally, in amounts totaling tens of millions of dollars.  (*See, e.g.*, *id.* at 16, 30, 37-38.)

## DISCUSSION

### I.    Standard of Review

Rather than pay this action's filing fee, Mr. Rivera submitted the IFP Application.  That filing suggests he likely qualifies for *in forma pauperis* ("IFP") status, but the federal statute governing IFP proceedings requires that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss [a case proceeding IFP] at any time if the court determines that … the action … is frivolous [or] fails to state a claim on which relief may be granted …."  28 U.S.C. § 1915(e)(2).

---

[6] The Complaint also refers to the Eighth Amendment, *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and various MSOP internal policies and Minnesota statutes.  The Court does not construe these as asserting distinct, freestanding causes of action, however.  As noted above, the Eighth Amendment does not apply because claims brought by civilly committed individuals are governed instead by the Fourteenth Amendment.  *Monell* addresses municipal-entity liability and provides no independent theory of recovery against the individual defendants named here.  And alleged violations of state law or internal MSOP policy do not, without more, give rise to Section 1983 liability.  *See Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993) (citing *Meis v. Gunter*, 906 F.2d 364, 369 (8th Cir. 1990)).

6

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also, e.g.*, *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (citing *Neitzke*). Courts in this District regularly dismiss as factually frivolous complaints that fail to allege how a defendant's actions establish liability. *See, e.g.*, *Logering v. Morrison Cnty. Sheriff's Dep't*, No. 23-CV-0177 (JWB/LIB), 2023 WL 3276515, at *4 (D. Minn. May 5, 2023) (citing cases), *aff'd*, No. 23-2376, 2023 WL 8713781 (8th Cir. Dec. 18, 2023).

When deciding whether a complaint states a claim, a court accepts its factual allegations as true and grants the plaintiff every reasonable inference. *See, e.g.*, *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 836 (8th Cir. 2014) (citing *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014)). A complaint need not be detailed, but its allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must also "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility test is "context-specific" and depends on a court's "judicial experience and common sense." *Id.* at 679; *see also Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc). Although courts are to read *pro se* complaints liberally, such pleadings still must include enough facts to support each claim. *See, e.g.*, *Sandknop v. Mo. Dep't of Corrs.*, 932 F.3d 739, 741–42 (8th Cir. 2019) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

The Court focuses its analysis below on the claims that are inadequately pleaded and ought to be dismissed before service is ordered. The Court then summarizes the claims that it recommends allowing to proceed.

7

## II.      Official Capacity Claims

Mr. Rivera purports to sue all Defendants in both their official capacities and individual capacities.  Any official capacity claims against the MSOP Defendants amount to claims against the State of Minnesota, because MSOP is a state-run program.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing cases); *McKay v. City of St. Louis*, 960 F.3d 1094, 1102 (8th Cir. 2020) (citing *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010)); *Larson v. Dep't of Humans Servs.*, No. 23-cv-1823 (JRT/DJF), 2024 WL 4485572, at *8 (D. Minn. May 16, 2024).  With limited exceptions not relevant here, the Eleventh Amendment bars federal claims for monetary damages against nonconsenting states.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citing cases); *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (citing *Will*, 491 U.S. at 71).  The State of Minnesota has not waived its Eleventh Amendment immunity for claims arising under Section 1983.  *Cf.* Minn. Stat. § 1.05 (waiving immunity under statutes other than Section 1983).  Minnesota's Eleventh Amendment immunity also extends to pendant state law claims.  *See Pennhurst State School & Hosp.*, 465 U.S. 89, 117-21 (1984); *Cooper v. St. Cloud State University*, 226 F.3d 964, 968 (8th Cir. 2000).  The Court therefore recommends dismissing all official-capacity claims for monetary damages against the MSOP Defendants.

The Eleventh Amendment also bars claims against state officials for non-monetary relief, unless the plaintiff: (1.) alleges an *ongoing* violation of federal law; (2.) alleges a connection between the violation and the particular state official defendant; and (3.) seeks non-monetary relief that is prospective.[7]  *See McDaniel v. Precythe*, 897 F.3d 946, 952 (8th Cir. 2018); *Meyer v. Stacken*, 17-cv-1761 (ADM/KMM), 2019 WL 4675353, at *2 (D. Minn. July 25, 2019), *report and recommendation adopted*, 2019 WL 4673941 (D. Minn. Sept. 25, 2019).  Mr. Rivera's claims

---

[7] This exception is called the *Ex Parte Young* doctrine.

for injunctive relief fail at the first element. At its core, the Complaint alleges two injuries that occurred at MSOP Moose Lake, where Mr. Rivera is no longer housed: (1.) specific past incidents of sexual assault; and (2.) the loss of Mr. Rivera's cafeteria job. Neither of these injuries is ongoing, nor does Mr. Rivera seek a return to MSOP Moose Lake. Therefore, the Complaint does not allege an ongoing violation of federal law,[8] and Mr. Rivera's official capacity claims against the MSOP employee Defendants should be dismissed in their entirety.

## III.   Failure to Investigate

It is well settled that a private citizen has no constitutional right to require the investigation or prosecution of someone else. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Pratt v. Helms*, 73 F.4th 592, 595 (8th Cir. 2023). Thus, in Section 1983 matters, a victim cannot press a standalone failure-to-investigate claim without asserting some other, independent constitutional violation. *See Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996) (citing *Gomez v. Whitney*, 757 F.2d 1005, 1006 & n. 1 (9th Cir. 1985)); *Doe v. Anoka Cnty.*, 776 F. Supp. 3d 756, 769 (D. Minn. 2025) (discussing *Pratt*).

Mr. Rivera raises failure-to-investigate claims against Ms. Gates (ECF No. 1 at 77) and the following MSOP Defendants: Mr. Herring (*id.* at 35), Mr. Olson (*id.* at 43), Mr. Carey (*id.* at 52), and Mr. Fri (*id.* at 60). The only theory of liability that the Complaint pleads against Ms. Gates with sufficient particularity is a failure-to-investigate claim. Since such claims cannot stand on their own, the Complaint fails to adequately state a claim against Ms. Gates, and the Court recommends dismissing Ms. Gates from this case entirely. Mr. Rivera's allegations about the

---

[8] To the extent Mr. Rivera claims that failure to investigate the alleged assaults or report them to law enforcement under PREA constitute ongoing violations of federal law, the Court recommends dismissal of those claims for the reasons discussed below.

MSOP Defendants' investigation failures are components of his failure-to-protect claims, which are standalone independent claims that are cognizable under Section 1983. The claims against these officials therefore do not warrant dismissal as part of the Court's Section 1915 review.

## IV.     Failure to Report

The Court liberally construes the Complaint as seeking to hold Ms. Flesvig and Ms. Johnson liable for their failure to report his alleged assaults to the police, based on three theories: (1) violation of PREA; (2) violation of the Minnesota Vulnerable Adults Act ("VAA") mandated reporter provisions, *see* Minn. Stat. § 626.557; and (3) a Fourteenth Amendment failure-to-protect theory premised on Ms. Flesvig and Ms. Johnson's alleged inaction after learning of the assaults. The first two theories are meritless and ought to be dismissed.

The Complaint fails to state a claim under PREA because the PREA does not create a private right of action. *See, e.g.*, *Gozo v. DHS*, No. 24-CV-1389 (KMM/ECW), 2024 WL 3184751, at *5 (D. Minn. May 31, 2024) (citing cases), *report and recommendation adopted*, 2024 WL 3183141 (D. Minn. June 26, 2024); *Smith v. Youngbird*, No. 21-CV-2249 (DSD/ECW), 2022 WL 3648700, at *7 (D. Minn. July 29, 2022) (same), *report and recommendation adopted*, 2022 WL 3647862 (D. Minn. Aug. 24, 2022). The Court therefore recommends dismissing any implied PREA claim against Ms. Flesvig or Ms. Johnson.

The Complaint fails to state a claim under the VAA, because the VAA limits MSOP detainee claims, and Mr. Rivera fails to adequately plead that he is an exception to the Act's limitations. As an MSOP civil detainee, Mr. Rivera is excluded from the Act's protections unless he has "a physical or mental infirmity or other physical, mental, or emotional dysfunction" unrelated to the reason for his commitment that both "impairs [his] ability to provide adequately for the [his] own care without assistance" and produces an "impaired ability to protect [himself]

10

from maltreatment." Minn. Stat. § 626.5572, subd. 21(a)(2). Mr. Rivera baldly asserts that he is a "vulnerable adult" (ECF No. 1 at 13), but he proffers no facts to support that conclusion. Without factual allegations of any impairment placing Mr. Rivera within an exception to the Act's exclusion for MSOP detainees, this conclusory assertion is inadequate to plead a VAA claim. *See Allan v. Gandhi*, No. 24-cv-3088 (ECT/DJF), 2025 WL 1373043, at *12 (D. Minn. Apr. 21, 2025) (rejecting VAA claim because complaint failed to allege supporting facts). The Court therefore recommends dismissing any VAA claim against Ms. Flesvig or Ms. Johnson.

## V.      Claims Against Ms. Budnick

The Complaint contains no allegations of what Ms. Budnick did, or failed to do, to violate Mr. Rivera's rights. It only states her job title. (ECF No. 1 at 3.) The Court therefore recommends dismissing any claims against Ms. Budnick as frivolous and dismissing Ms. Budnick from this action.

## VI.     Vocational Placement Procedural Due Process Claims

To the extent Mr. Rivera seeks to advance a freestanding procedural due process claim based on losing his vocational placement in the kitchen that is independent of any First Amendment retaliation theory, established case law forecloses that claim. To successfully assert a procedural due process claim, a plaintiff must allege the deprivation of a constitutionally protected life, liberty, or property interest. *See Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011) (quoting *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1114 (8th Cir. 2009)); *Cane v. Stevenson*, No. 25-cv-3045 (LMP/LIB), 2026 WL 972947, at *5 (D. Minn. Apr. 10, 2026) (same). Courts in this District have repeatedly held that MSOP detainees have no constitutionally protected property or liberty interest in institutional employment. *See, e.g., Dean v. Johnston*, No. 19-cv-3186 (JRT/LIB), 2020 WL 7249818, at *9 (D. Minn. July 23, 2020) (citing cases), *report and*

11

*recommendation adopted*, 2020 WL 6867409 (D. Minn. Nov. 23, 2020); *Semler v. Johnston*, No. 17-cv-2822 (ECT/LIB), 2019 WL 7580107, at *7 (D. Minn. Aug. 2, 2019) (same), *report and recommendation adopted*, 2019 WL 5854039 (D. Minn. Nov. 8, 2019), *aff'd*, 818 F. App'x 580 (8th Cir. 2020).  The Court therefore recommends dismissing with prejudice any standalone procedural due process claim concerning Mr. Rivera's vocational placement.

## VII.    Remedies

The Complaint requests the following forms of injunctive relief, among others: (1.) Mr. Rivera's release from MSOP custody (ECF No. 1 at 53); (2.) an order directing Mr. Herring to fire Mr. Eckart (*id.* at 29); and (3.) an order directing that Mr. Eckart and Mr. Carey be criminally charged (*id.* at 30, 53).  The exclusive federal vehicle for challenging the fact or duration of confinement is a petition for habeas corpus.  *See, e.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  Because Mr. Rivera has not brought a habeas petition, the Court recommends dismissing Mr. Rivera's demand for release from custody.  The Court also recommends dismissing Mr. Rivera's demand that Mr. Herring fire Mr. Eckart, because whether Mr. Eckart should be subject to adverse employment actions is an issue best left to MSOP administrators.  *See Prouty v. DHS, MSOP of the State of Minnesota*, No. 21-cv-1349 (SRN/TNL), 2021 WL 3051982, at *4 (D. Minn. July 20, 2021) (denying plaintiff's request for an order directing termination of numerous MSOP employees).  Finally, "a private plaintiff cannot force a criminal prosecution because the authority to initiate criminal charges lies only with the state and federal prosecutors."  *Lightfeather v. Woods*, No. 8:21-cv-115 (RGK), 2021 WL 3172020, at *2 (D. Neb. July 27, 2021); *see also Sylvester v. Sylvester*, No. 09-cv-2544 (JMR/FLN), 2009 WL 3711562, at *2 n.3 (D. Minn. Nov. 3, 2009).  Mr. Rivera's request for an order that Mr. Eckart and Mr. Carey be criminally charged should be dismissed accordingly.

## VIII. Conclusion

For the convenience of the parties, the Court identifies the claims and Defendants remaining in this action if the recommendations set forth herein are adopted. Since the Court recommends that all official capacity claims be dismissed, the surviving claims are against the Defendants solely in their individual capacities.

The surviving federal claims are: (1.) Mr. Rivera's Fourteenth Amendment bodily integrity claims against Mr. Stewart and Mr. Eckart based on the alleged sexual contact during pat searches in March 2025; (2.) Mr. Rivera's Fourteenth Amendment failure-to-protect claims against Mr. Herring, Mr. Olson, Mr. Carey, Mr. Fri, Ms. Flesvig and Ms. Johnson based on their alleged notice of and failure to protect against or report sexually motivated misconduct; and (3.) Mr. Rivera's First Amendment retaliation claim against Ms. Johnson based on the withdrawal of Mr. Rivera's vocational placement. The remaining state law claims, under the supplemental jurisdiction provision of 28 U.S.C. § 1367(a), are the claims against Mr. Stewart, Mr. Eckart, Mr. Herring, Mr. Olson, Mr. Carey, Mr. Fri, Ms. Flesvig, and Ms. Johnson sounding in assault, battery, negligence, and intentional infliction of emotional distress.

The Court's preliminary conclusions under Section 1915 do not limit the remaining Defendants from responding to the Complaint as they choose after service. They may answer or bring a motion under Rule 12, including a motion to dismiss any of the surviving claims for failure to state a claim.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the following claims within Plaintiff Alveto Rivera's

Complaint for Violation of Civil Right Under 42 U.S.C. § 1983 (ECF No. 1) be dismissed pursuant to 28 U.S.C. § 1915(e)(2):

1. All official capacity claims be **DISMISSED WITHOUT PREJUDICE** as barred by the Eleventh Amendment.

2. All claims against Defendant Georgia Gates be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

3. Any claims premised on the Prison Rape Elimination Act or the Minnesota Vulnerable Adults Act be **DISMISSED WITH PREJUDICE**.

4. All claims against Defendant Nick Budnick be **DISMISSED WITHOUT PREJUDICE** as frivolous.

5. Any Fourteenth Amendment procedural due process claim based on Mr. Rivera's alleged loss of institutional employment be **DISMISSED WITH PREJUDICE**.

6. Mr. Rivera's demand for release from MSOP custody be **DISMISSED WITHOUT PREJUDICE**.

7. Mr. Rivera's demands for Mr. Eckart's firing and criminal charges against Mr. Eckart and Mr. Carey be **DISMISSED WITH PREJUDICE**.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff Alveto Rivera's Declaration in Support of Request for Leave to Proceed In Forma Pauperis (ECF No. 2), which the Court construes as a request to proceed *in forma pauperis* ("IFP") in this action, is **GRANTED**.

14

2.  The Clerk of Court is directed to send to the email account designated by the Minnesota Attorney General's Office: (1) a Notice of Electronic Filing notifying the State of Minnesota that this lawsuit has been filed and that *in forma pauperis* status has been granted; (2) a copy of the operative pleading in this matter (ECF No. 1); and (3) a copy of this Order and Report and Recommendation.

3.  Within 30 days of this order's date, the Minnesota Attorney General's Office is directed to file a "Waiver of Service Executed" form with respect to the following defendants: Jonathan Stewart, Christopher Eckart, Anthony M. Herring, Phil Olson, Blake Carey, Charles S. Fri, Evelyn Flesvig, and Trisha Johnson; except that if any such defendant does not waive service, the Minnesota Attorney General's Office shall file a statement identifying those defendants for whom service of process is not being waived.

4.  Defendants who waive service shall answer or otherwise respond to the Complaint within 60 days after the presiding district judge, the Honorable Patrick J. Schiltz, issues an order adopting or rejecting the above Report and Recommendation.

Dated: May 19, 2026                         *s/ Dulce J. Foster*
                                            DULCE J. FOSTER
                                            United States Magistrate Judge

## NOTICE

### Report and Recommendation

**Filing Objections:** The Report and Recommendation component of this Order and Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

## Order

**Filing Objections**: The Order component of this Order and Report and Recommendation is not appealable to the Eighth Circuit Court of Appeals until the conclusion of this matter.

Under Local Rule 72.2(a)(1), "a party may file and serve written objections to the order within 14 days after being served a copy" of the order.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(a)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

16